1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6    UNITED STATES OF AMERICA,              Case No.  99-cr-20084-SVK-1

7                    Plaintiff,

8          v.                               **ORDER ON DEFENDANT'S PETITION**
                                            **FOR WRIT OF ERROR CORAM**
9    MANJARREZ,                             **NOBIS**

10                   Defendant.             Re: Dkt. No. 23

11          In July 1999, Defendant Andres Ubaldo Manjarrez Renteria ("Manjarrez") pleaded guilty

12   to possession of a false identification document with intent to defraud in violation of 18 U.S.C.

13   § 1028(a)(4).  Dkt. 23-5.  Manjarrez now seeks to vacate his conviction via a writ of error coram

14   nobis.  Dkt. 23.  The Court finds this matter suitable for determination without oral argument.

15   Civ. L.R. 7-1(b).  For the reasons set forth below, the Court **DENIES** Manjarrez's petition.

16          **I.        BACKGROUND**

17                 **A.  Factual Background**

18          Manjarrez is a Mexican citizen who first came to the United States in 1989.  Dkt. 23-1 at

19   1-2 (petition); Dkt. 23-2 (Manjarrez Decl.) ¶ 1.  Manjarrez states that with his partner/common

20   law wife, he has two daughters, one of whom was born in the United States and one of whom has

21   DACA status.  Dkt. 23-1 at 2; Dkt. 23-2 ¶ 1.  According to Manjarrez, he has consistently worked

22   and paid taxes in the United States.  Dkt. 23-1 at 2; Dkt. 23-2 ¶¶ 1, 17.

23          On April 2, 1999, the Government filed a criminal complaint against a John Doe defendant

24   for False Statement in an Application for a United States Passport in violation of 18 U.S.C.

25   § 1542.  Dkt. 23-3.  According to the complaint, an unknown person applied for a passport in the

26   name of a deceased individual, Oscar R. Garcia, using various forms of identification for Garcia.

27   *Id.*  On June 1, 1999, the Government filed an information in the case charging Manjarrez with

28   Possession of a False Identification Document with Intent to Defraud the United States in

violation of 18 U.S.C. § 1028(a)(4).  Dkt. 23-4.  In July 1999, Manjarrez pleaded guilty to the offense charged in the information pursuant to a plea agreement.  Dkt. 23-5.  Manjarrez was subsequently sentenced to two years of supervised probation with standard and special conditions.  Dkt. 23-6.  Among the special conditions imposed, Manjarrez was required to "comply with the rules and regulations of the Immigration and Naturalization Service (INS) and, if deported, not re-enter the United States without the express consent of the United States Attorney General."  *Id.*  As a consequence of this conviction, Manjarrez is permanently barred from gaining permanent residence status in the United States pursuant to 8 U.S.C. § 1182(a)(6)(C)(ii).  Dkt. 23-7 (Todd Decl.) at ¶¶ 9-13

### B.  Procedural Background

On November 29, 2022, Manjarrez filed the petition for writ of error coram nobis that is now before the Court.  Dkt. 23.  Because the Magistrate Judge who initially presided over Manjarrez's criminal case has retired, the case was reassigned to the undersigned and a briefing schedule was set.  Dkt. 24-26.

### C.  Petitioner's Request

Manjarrez seeks an order vacating his 1999 conviction on the grounds that he was denied effective assistance of counsel because his Assistant Federal Public Defender did not advise him of the immigration consequences of his guilty plea.  Dkt. 23-1 at 3; Dkt. 23-2 ¶¶ 3-4.  Specifically, Manjarrez avers that "in response to remarks and question by Manjarrez concerning his desire to attain legal status in the United States," the Public Defender "told him the *only* negative consequences he would suffer would be a misdemeanor conviction and probation."  Dkt. 23-1 at 3 (emphasis in original); *see also* Dkt. 23-2 ¶¶ 3-4.  He also states that if I had known that the plea and conviction gave rise to immigration consequences, he would have asked his attorney to work out a plea bargain that did not have those consequences or he would have gone to trial.  Dkt. 23-1 at 3; *see also* Dkt. 23-2 ¶¶ 3-4.  He further states that his misdemeanor conviction has "rendered him inadmissible and ineligible for cancellation of removal, which makes him permanently unable to obtain lawful status in the United States."  Dkt. 23-1 at 3; *see also* Dkt. 23-7 ¶¶ 9-13.

Manjarrez also entered a guilty plea in November 1999 to state perjury charges based on

United States District Court
Northern District of California

the same conduct as the federal charges.  Dkt. 23-2 ¶ 7.  As he does with regard to the federal plea bargain, Manjarrez claims that his state public defender did not discuss the immigration consequences of his plea and resulting conviction.  *Id.* ¶ 8.  The Government argues that Manjarrez's state conviction is an independent bar to admissibility.  Dkt. 31 at 12-14.  Following completion of the briefing on the present writ petition, Manjarrez submitted a request to submit an additional exhibit in support of his reply brief, which the Court **GRANTS**.  Dkt. 39.  The additional exhibit is a proposed stipulation and order to vacate the state conviction, which, according to Manjarrez, the state Deputy District Attorney has indicated she would not oppose. *Id.*

## II.    LEGAL STANDARD

"The writ of coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody."  *United States v. Zhu*, No. CR 03-0348-WHA, 2016 WL 729525, at *1 (N.D. Cal. Feb. 24, 2016) (quoting *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995)).  Both the Supreme Court and the Ninth Circuit "have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *Zhu*, 2016 WL 729525, at *1 (quoting *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007)) (citation omitted).

"To qualify for coram nobis relief, a defendant must establish four elements: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."  *Zhu*, 2016 WL 729525, at *1 (quoting *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991)) (citation omitted).  "These requirements are conjunctive, such that failure to meet any one of them is fatal." *United States v. Dhingra*, No. CR 01-40144 SBA, 2019 WL 2744852, at *3 (N.D. Cal. July 1, 2019) (citing *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002)).  "It is presumed the [underlying] proceedings were correct and the burden rests on the [petitioner] to show otherwise."  *United States v. Morgan*, 346 U.S. 502, 512 (1954).

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.     DISCUSSION

#### A.  First Element: A More Usual Remedy Not Available

The Government concedes, at least for sake of argument, that Manjarrez, who is not in custody, satisfies the first element for coram nobis relief because he is currently not eligible to raise his arguments in a direct appeal or via a habeas petition or a motion under section 2255. Dkt. 31 at 4.

#### B.  Second Element: Timeliness of Challenge

The time for filing a petition for writ of error coram nobis "is not subject to a specific statute of limitations." *United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005), abrogated on other grounds in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010); *see also Morgan,* 346 U.S. at 507. "However, courts have required coram nobis petitioners to provide valid or 'sound reasons' for any delay after learning of the adverse effects of a conviction because coram nobis is an 'extraordinary remedy that should be granted only under circumstances compelling such action to achieve justice.'" *Garcia v. United States*, No. CR 97-022 MEJ, 2012 WL 5389908, at *4 (N.D. Cal. Nov. 5, 2012) (quoting *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007)).

Moreover, the Ninth Circuit has held that petitioners for a writ of error coram nobis must exercise due diligence. *See United States v. Ortiz*, 848 Fed. App'x 276, 277 (9th Cir. 2021). In *Ortiz*, the Ninth Circuit affirmed a district court's denial of a petition for writ of error coram nobis where the petitioner had waited almost twenty years before seeking to expunge his conviction, even though the petitioner stated that he was not aware that his conviction permanently barred him from gaining permanent resident status in the United States. *Id.*  The appeals court explained that "[a] petitioner who could have reasonably asserted the basis of a coram nobis petition earlier has no valid justification for delay, and therefore, is disqualified from receiving coram nobis relief." *Id.*; *see also United States v. Indelicato*, No. CR-85-0078-EMC, 2015 WL 5138565, at *2 (N.D. Cal. Sept. 1, 2015), *aff'd*, 677 Fed. App'x 428 (9th Cir. 2017).  "While the petitioner is not required to file his writ at the earliest opportunity, any delay in filing is unreasonable where the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ." *Garcia*, 2012 WL

United States District Court
Northern District of California

1   5389908, at *4 (internal quotation marks and citation omitted).

2        Manjarrez contends that valid reasons exist for his failure to attack his 1999 conviction

3   before he filed the present petition on November 29, 2022.  Dkt. 23-1 at 14-18.  His primary

4   argument is that he was not informed when he conferred in 2001 and 2018 with Roseann Martinez

5   that his conviction made him ineligible for lawful status.  Dkt. 23-1 at 15-16; Dkt. 23-2 ¶¶ 11-13.

6   According to Manjarrez, he thought Martinez was an immigration attorney, but she was actually a

7   paralegal.  *Id.*  Manjarrez claims that Martinez told him in 2001 that he had no basis for lawful

8   status at that time but that if he had a child who was a U.S. citizen he might have a basis for lawful

9   status.  Dkt. 23-1 at 15; *see also* Dkt. 23-2 ¶ 11.  Manjarrez also alleges that after he had a child

10  who was born in the United States, he again consulted Martinez in 2018, and she told him he had

11  no path to citizenship at that time and again did not explain that his convictions posed an

12  impediment.  Dkt. 23-1 at 15; Dkt. 23-2 ¶¶ 12-13.  Manjarrez claims that it was not until 2021,

13  when he "renewed his efforts to find some path to legal status" by consulting immigration attorney

14  Peter Weiss, that he learned that he needed post-conviction relief to have any hope of obtaining

15  lawful status.  Dkt. 23-1 at 15; Dkt. 23-2 ¶ 14.  He followed that attorney's advice and retained

16  post-conviction counsel in March 2021.  Dkt. 23-1 at 15-16; Dkt. 23-2 ¶ 15.

17       Manjarrez does not explain several lengthy gaps in the timeline set forth above.  First, he

18  delayed approximately two years between the date of his federal guilty plea and his first

19  consultation with paralegal Martinez in 2001.  Dkt 23-2 ¶¶ 5, 11.  Second, and significantly, he

20  delayed 17 years from the initial consultation with Martinez in 2001 until consulting her for a

21  second time in 2018.  *Id.* ¶¶ 11, 13.  Third, he delayed another three years between being told by

22  Martinez in 2018 that he had no path to legal status at that time and his renewed effort to obtain

23  legal status by consulting attorney Weiss in 2021.  *Id.* ¶¶ 13, 14.  And finally, although Manjarrez

24  states that he retained post-conviction counsel in March 2021 and that counsel obtained all

25  relevant records and reviewed them with immigration counsel by April 2022, he delayed several

26  months before filing the present writ petition on November 29, 2022.  *Id.* ¶¶ 15, 16; Dkt. 23.

27       Of particular concern is Manjarrez's unexplained delay of approximately 17 years between

28  his first and second consultations with paralegal Martinez.  According to Manjarrez, Martinez told

1  him in 2001 that having a U.S.-born child could bolster his attempt to seek lawful status, and he

2  and wife decided to have a second child based on this advice.  Dkt. 23-2 ¶¶ 11-12.  Manjarrez's

3  U.S.-born child was born in 2002.  Dkt. 23-7 at ¶ 6.  If, as Manjarrez states, he and his wife had

4  their second child based on paralegal Martinez's advice that it would help him obtain lawful

5  status, he offers no explanation why he waited approximately 16 years after the child's birth to

6  further pursue this course.  Similarly, Manjarrez fails to explain the further delay from his second

7  consultation with the paralegal in 2018 and his renewed efforts to obtain lawful status in early

8  2021.  *See* Dkt. 23-2 ¶ 14.

9        The record before the Court establishes that relief in this case is unwarranted because

10  Manjarrez's multiple delays from his conviction in 1999 until his discovery in February 2021 of

11  the immigration consequences of his conviction resulted from his failure to exercise due diligence.

12  The facts of this case are similar to those in *Ortiz*, in which the petitioner sought a writ of error

13  coram nobis on the grounds that defense counsel did not advise him of the immigration

14  consequences of his plea and he did not learn of those consequences until years later.  848 Fed.

15  App'x at 277.  In that case, the Ninth Circuit affirmed the district court's denial of the writ on

16  grounds of delay.  *Id.* at 278.  In other cases, "[c]ourts have found valid reasons for delay where

17  the applicable law was recently changed and made retroactive, when new evidence was discovered

18  that the petitioner could not reasonably have located earlier, and when the petitioner was

19  improperly advised by counsel not to pursue habeas relief."  *Garcia*, 2012 WL 5389908, at *3

20  (internal quotation marks and citations omitted).  However, Manjarrez does not make such

21  arguments here.  For example, he admits that the Supreme Court's 2010 decision in *Padilla* is not

22  retroactive to the time of his conviction but argues that defense attorney's "affirmative misadvice

23  about the immigration consequences of a criminal conviction constitutes ineffective assistance of

24  counsel even in those cases where the advice occurred prior to *Padilla*."  Dkt. 23-1 at 9.

25  Moreover, he does not cite any new evidence regarding the underlying crime.  Finally, and

26  significantly, Manjarrez has not shown that in the more than 20 years since his conviction he

27  pursued any remedy in the immigration courts or this Court.  Manjarrez's petition is premised on

28  his representation that he informed his defense counsel at the time of the plea in 1999 that "my

United States District Court
Northern District of California

United States District Court
Northern District of California

1    dearest wish was to obtain lawful status in the United States" and in that, in fact, "this was the

2    reason I committed the offense conduct." Dkt. 23-2 ¶ 3.  Despite his two consultations with

3    paralegal Martinez in 2001 and 2018 and his allegation that he and his wife had a child in 2002 in

4    order to bolster his chances for lawful status, Manjarrez makes no showing that he took any other

5    action over nearly two decades in an attempt to change his immigration status.  A petitioner for a

6    writ of error coram nobis "cannot simply rely on bad advice of counsel in excusing his delay; he

7    had to exercise due diligence." *Indelicato*, 2015 WL 5138565, at *5.

8            Even if Manjarrez's obligation to seek relief did not arise until he actually learned that his

9    conviction had immigration consequences—which, according to Manjarrez, occurred when he

10   consulted immigration attorney Peter Weiss in February 2021 (Dkt. 23-2 ¶ 14)—he also has not

11   justified the additional delay of approximately 21 months before filing the present petition.  Courts

12   have found even shorter delays unreasonable.  *See Garcia*, 2012 WL 5389908, at *6 (finding

13   unreasonable a delay of 15 months after defendant learned he could not obtain permanent resident

14   status; rejecting explanation that petitioner's post-conviction counsel needed 15 months "to

15   prepare his case, including interviewing [petitioner] and his old immigration attorney and

16   obtaining [petitioner's] criminal and immigration files"); *Riedl*, 496 F.3d at 1006-07 (rejecting

17   petitioner's arguments why she could not challenge her conviction while she was in prison, in the

18   nine months between her release from prison and her deportation, or in the 20 months between her

19   deportation and the filing of her writ petition).  Especially in light of his attorneys' professed

20   expertise surrounding the immigration consequences of criminal convictions, Manjarrez has not

21   provided valid reasons for the 21-month delay in filing the petition.  *See Garcia*, 2012 WL

22   5389908, at *6.  Moreover, Manjarrez states that once he retained post-conviction counsel in

23   March 2021, by April 2022 counsel "had obtained all relevant records and she and [immigration

24   counsel] Todd had reviewed them."  *Id.* ¶¶ 15-16.  Although post-conviction counsel explains the

25   chronology of obtaining relevant records and investigating Manjarrez's claim, there appears to

26   have been only minimal progress in these efforts from April 2022 (when counsel states she was

27   retained to file a petition for writ of error coram nobis) and September 2022 (when counsel

28   obtained a declaration from Todd).  *See* Dkt. 23-9 ¶¶ 8-16.  Counsel appears to attribute this delay

1   largely to the fact that her office unsuccessfully made "multiple attempts" to contact paralegal

2   Martinez and did internet research about Martinez, but petitioner and his counsel have not shown

3   that they were diligent in pursuing this information.

4          The cases Manjarrez cites for the proposition that his delay was reasonable do not involve

5   such a lengthy delay, much less the series of significant delays that are present in this case.  *See*

6   *Park v. United States*, 222 Fed. App'x 82, 83 (2d Cir. 2007) (five year delay from sentencing to

7   filing petition for writ of coram nobis); *Kwan*, 407 F.3d at 1014 (five year delay between guilty

8   plea and filing writ petition); *Li Hua Qiao v. United States,* No. 98 Cr. 1484 (SHS), 2007 U.S.

9   Dist. LEXIS 87934, at *12-14 (S.D.N.Y. Nov. 15, 2007) (2.5 year delay between notice of

10  removal proceedings and filing writ petition).

11         Accordingly, Manjarrez's petition is untimely and is therefore **DENIED**.

12         In light of the Court's conclusion that Manjarrez's petition is untimely, it need not reach

13  the Government's alternative argument that the relief sought is barred by laches.  The doctrine of

14  laches is not part of the delay element of coram nobis relief.  *Garcia*, 2012 WL 5389908, at *7.

15  Laches provides the government a "supplemental defense" where it was prejudiced by the

16  petitioner's delay in seeking relief.  *Id.; see also Reidl*, 496 F.3d at 1003.  On the issue of whether

17  Manjarrez's delay in filing the petition was justified, "the burden is on [Manjarrez] alone … and

18  he has not met his burden."  *Garcia*, 2012 WL 5389908, at *7.

19

20                  **C.  Third and Fourth Elements: Error of Most Fundamental Character
                        Causing Adverse Consequences**

21         The Parties dispute whether the third and fourth requirements for coram nobis are satisfied.

22  Manjarrez argues that he received ineffective assistance of counsel which led to the federal

23  conviction that renders him inadmissible.  *See* Dkt. 23-1 at 6-14, 18; Dkt. 38 at 13-15.  The

24  Government argues that the evidence is insufficient to establish that Manjarrez received

25  ineffective assistance of counsel, and the Government also contends that Manjarrez "has not

26  shown that he faces deportation solely as a result of the challenged conviction" as opposed to his

27  state court conviction or the underlying conduct itself.  Dkt. 31 at 8-14.  In his reply brief,

28  Manjarrez requests an evidentiary hearing in light of the parties' dispute over whether he has

provided sufficient corroboration of his claim that he received ineffective assistance of counsel. Dkt. 38 at 16-17.

The Court need not resolve these disputes, and Manjarrez's requested evidentiary hearing regarding the facts of his communications with counsel at the time of the plea agreement is not necessary.  For the reasons discussed in Section III.B., Manjarrez's unjustified delay in seeking relief is fatal to his petition, regardless of whether the other requirements for coram nobis are satisfied.  *See Matus-Leva,* 287 F.3d at 760; *Dhingra*, 2019 WL 2744852, at *3.

**IV.    CONCLUSION**

For the reasons set forth above, Defendant Manjarrez's petition for a writ of error coram nobis is **DENIED**.

**SO ORDERED.**

Dated: June 13, 2023

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California